UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ALLEN ROBINSON-BEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12CV61JCH |
| | ) | |
| IAN WALLACE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Before the Court is the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Allen Robinson-Bey (Petitioner). (ECF No. 1). The matter is fully briefed and ready for disposition.

**I.
BACKGROUND**

Petitioner was charged with robbery in the first degree (Mo. Rev. Stat. § 529.020) and armed criminal action related to the robbery (Mo. Rev. Stat. § 571.015). The testimony at Petitioner's trial was as follows. On February 1, 2003, Trenton Wynn was driving home at approximately 11:00 p.m. (Resp. Ex. A (Tr.) at 178-81). He started looking for a nightclub and began driving up and down the streets near Grand, in St. Louis. (Tr. 184). He saw a car on the side of the street, with its headlights flashing and a man, later identified as Petitioner, standing outside the car, flagging him down. (Tr. 185, 188). Believing that Petitioner needed help, Wynn pulled over to see if he could help him. (Tr. 186). Petitioner told him that he had a flat tire and needed a jack. (Tr. 186). Wynn got out of his car to retrieve his jack from his trunk. (Tr. 186).

Petitioner walked to the back of Wynn's car as well, stood beside Wynn, pulled out a gun, held it to Wynn's side, and said, "no, I'll just take the whole damn car." (Tr. 188-190). Wynn took his cell phone which was in his hand and started dialing 911. (Tr. 190). Petitioner made a brief attempt to grab the cell phone but Wynn pulled his hand back so Petitioner jumped in Wynn's car and drove off. (Tr. 190).

After Petitioner drove off, Wynn realized that he did not know where he was, so he walked to a store, asked the clerk where he was, and then finished his call to 911. (Tr. 192-193). Wynn informed the dispatcher that he had been carjacked; the police arrived about ten to fifteen minutes later. (Tr. 193,240). Wynn gave a description of Petitioner to the officers and then waited for his brother to come pick him up. (Tr. 194, 245). Wynn's car was returned to him about a month later. (Tr. 194).

On March 8, 2003, Wynn returned to the same area to meet his friend at a nightclub. (Tr. 196-197). Wynn saw Petitioner standing outside a car trying to flag Wynn down again; Petitioner was wearing the same clothes as he had been the month earlier. (Tr. 197). Wynn then headed straight to the police station and told them what he had seen. (Tr. 198, 260). Officers then took Wynn back to the general location to see if they could locate Petitioner; they did not locate him. (Tr. 200, 261). After returning to the police station, Wynn again went to the same area and again found Petitioner on the street trying to flag people down. (Tr. 200). Wynn again returned to the police station, and officers went back to the area with Wynn. (Tr. 201, 262). This time they located Petitioner and arrested him (Tr. 201, 264-265). A jury convicted Petitioner as charged. (Resp. Ex. B at 39-40).

Petitioner filed a direct appeal. (Resp. Ex. C). The Missouri appellate court affirmed Petitioner's conviction. (Resp. Ex. E). Petitioner then filed a pro se Rule 29.15 post-conviction relief motion. (Resp. Ex. F at 3-8). Counsel was appointed and filed an amended motion (Resp. Ex. F at 9, 13-27), which was denied (Resp. Ex. F at 28-92). Petitioner appealed the motion court's decision. (Resp. Ex. G). On February 15, 2011, the Missouri appellate court affirmed the motion court's denial of Petitioner's post-conviction relief motion. (Resp. Ex. I).

On January 9, 2012, Petitioner filed his section 2254 Petition in which he raised the following claims:

1. The trial court erred and abused its discretion in failing to sustain defense counsel's objection to the prosecutor's improperly "inject[ing] himself as a witness during cross-examination of Petitioner" and in failing to instruct the jury to disregard the prosecutor's doing so.

2. Defense counsel was ineffective for failing to object to an incomplete jury instruction for the lesser-included offense of stealing.

3. Defense counsel was ineffective for failing to move for a mistrial based on Petitioner's incompetence to stand trial or failing to invoke Mo. Rev. Stat. § 552.020.2[1] to determine whether Petitioner was competent to stand trial.

(ECF No. 1).

## II.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date

---

[1] Mo. Rev. Stat. § 552.020.2 provides, "[w]henever any judge has reasonable cause to believe that the accused lacks mental fitness to proceed, he shall, upon his own motion or upon motion filed by the state or by or on behalf of the accused, by order of record, appoint one or more private psychiatrists or psychologists . . . to examine the accused; or shall direct the director to have the accused so examined."

of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326–29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782–83 (8th Cir.2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably. Id. at 283 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir.2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir.2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. § 2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir.2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams, 529 U.S. 362, the Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that " § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits

in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412–13.

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. It is not necessary for a state-court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits

of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003).

## III.
## STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir.1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697. To do so, a petitioner

must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the Supreme Court stated in Strickland, 466 U.S. at 688–89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4–1.1 to 4–8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions.

Judicial scrutiny of counsel's performance is highly deferential, and a reviewing court may not second-guess counsel's decisions. Rather, the reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." Id. at 89.

**IV.
DISCUSSION**

**Ground 1:** Petitioner claims the trial court erred and abused its discretion in failing to sustain defense counsel's objection to the prosecutor's improperly "inject[ing] himself as a witness during cross-examination of Petitioner," and in failing to instruct the jury to disregard

the prosecutor's doing so. On the first day of trial, during the prosecutor's examination of Mr. Wynn, the victim, the following occurred:

> Mr. Tyson [the prosecutor]: Yes. Is there something funny going on in this Courtroom that I'm missing, Your Honor, because I'm hearing a[n] awful lot of chuckling and stuff going over-on over here. It's been going on the entire time, Your Honor.
>
> The Court: Okay. Mr. Tyson, I noticed the last incident. And Mr. Taaffe-Mr.-Mr. Robinson let me ask you through Mr. Taaffe to remember that you're in the Courtroom and please keep any reactions you have to yourself.
>
> Petitioner: Yes, sir.
>
> The Court: Very good. You may continue Mr. Tyson.

(Tr. 202).

The next day, during the prosecutor's cross-examination of Petitioner, the following occurred relevant to Ground 1:

> Q. By the way, are you okay cause I noticed you were crying when you first started testifying? You['re] okay now it looks like, right?
>
> A. Naw, I[] still ain't okay.
>
> Q. Okay. Okay. I'm just wondering if something is different today than for instance Monday when - when you- you were sleeping. Something different today?
>
> A. Doesn't matter what-yeah, I'm - yeah, it's something different today.
>
> Mr. Taaffe: Objection, Your Honor. I think this is improper questioning.
>
> A. Telling-I'm telling you.
>
> The Court: I'll allow the question and the answer.
>
> Mr. Tyson: Okay. And I'm wondering if-if something was different while you were up here on direct examination crying for these people. If-if that's different than yesterday when you were actually chuckling about the evidence as it was being presented. Today is a different day is that the deal?

A. Today man, it's the same as yesterday; other-every other day. I ain't up here playing man. I'm serious. I am serious. That-that crying come from my heart-

. . . .

Q. I'm betting that some of these folks may wonder how serious you are if they saw you and heard you chuckling and laughing yesterday. What was-was-what was that all about?

A. I'm chuckling and laughing cause I'm listening to Mr. Wayne (sic) sitting up there and lying.

Q. Okay. And chuckling and laughing this morning when you came into the Courtroom before we started, talking about how you were going to testify.

Mr. Taaffe: Objection.

Mr. Tyson: You were laughing then.

Mr. Taaffe: Objection. May we approach?

(Counsel approached the bench and the following was recorded:)

Mr. Taaffe: Your Honor.

The Court: Mr. Taaffe.

Mr. Taaffe: Your Honor, Mr. Tyson is referring to observations that he made of my client prior to the trial starting. Now I think that this is improper questioning for a number of reasons. The first primary reason is that when he placed Mr. Tyson or put him in a position of being a witness in the case. He cannot make observations of my client's demeanor prior to trial and then use them or purposes of cross-examination. Because then I should be able to call him and cross him about what he saw prior to trial. I think it's inappropriate on cross-examination. And any observations that were made during trial I think are fair game but even then I would . . believe I would have the opportunity to cross-examine Mr. Tyson with regard to how he heard what he heard specifically. I think the whole line is improper and-and it makes him a witness. I think it's - it's overly argumentative. Let the jury observe the client's demeanor, they were here also.

The Court: Mr. Tyson, anything you want to say?

Mr. Tyson: I think it's a proper line of questioning Your Honor.

The Court: I think that the general line of questioning concerning Mr. Robinson's conduct in the Courtroom is proper. On that basis, I overrule your first objection. Mr. Taaffe, *I do think we may be getting into a problematic area if we try to talk about things that the-that the jury-- that the jurors themselves did not have a chance to observe. So I'll sustain that objection as to the-the things that Mr. Robinson did while the jury was not present in the Courtroom.*

Mr. Tyson: Very well.

The Court: All right.

(The proceedings returned to open Court.)

The Court: You may continue Mr. Tyson when you're ready.

(Tr. 302-304) (emphasis added).

The prosecutor then moved to a different line of questioning.

On appeal, Petitioner argued that the trial court erred initially in overruling the objection, in sustaining the objection outside the hearing of the jury, not sua sponte instructing the jury to disregard the question about Petitioner's behavior before court began in the morning, and not sua sponte declaring a mistrial. The Missouri appellate court affirmed without comment. (Resp. Ex. E).

Respondent argues Petitioner's Ground 1 is not cognizable pursuant to § 2254. (ECF No. 9 at 4). In Ground 1, Petitioner takes issue with the State court's ruling on an evidentiary matter. Admissibility of evidence in a state trial is a matter of state law, and habeas relief does not lie for errors of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Habeas relief is available for state court evidentiary rulings only where the court's ruling "is so prejudicial that it amounts to a denial of due process." Id. The record reflects that, ultimately, Petitioner's objection was sustained and the prosecutor changed his line of questioning. The Court finds, therefore, that Petitioner has not established a denial of due process and that Petitioner's

Ground 1 is not cognizable pursuant to federal habeas review. See id.; Scott v. Jones, 915 F.2d 1188, 1190-91 (8th Cir. 1990) (because admission or exclusion of evidence is primarily state law question, evidentiary determination rarely gives rise to federal question reviewable in habeas petition).

**Ground 2.** Petitioner claims counsel was ineffective for failing to object to an incomplete jury instruction for the lesser-included offense of stealing. Specifically, he claims the fourth element of stealing was excluded from the jury instruction for stealing. The court gave the following instruction based on MAI-CR3d 324.02:

> As to Count I, if you do not find the defendant guilty of robbery in the first degree as submitted in Instruction No. 5, you must consider whether he is guilty of stealing.
>
> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
>
>> First, that on or about February 1, 2003, in the City of St. Louis, State of Missouri, the defendant took a Mazda Protégé automobile, property owned by Trenton Wynn, and
>>
>> Second, that defendant did so without the consent of Trenton Wynn, and
>>
>> Third, that defendant did so for the purpose of using or disposing of it in such a way that made recovery by the owner unlikely,
>
> then you will find the defendant guilty under Count I of stealing.
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

(Resp. Ex. B at 31).

The instruction for stealing without consent has the additional element requiring that the property taken has a value of at least five-hundred dollars; the instruction given to the jury did not include this element. See MAI-CR3d 324.02.

In his Rule 29.15 Petitioner alleged the stealing instruction was incomplete in that the fourth element was not included. (Resp. Ex. F at 18). The motion court found Petitioner's claim not cognizable pursuant to Rule 29.15. (Resp. Ex. F at 30) (holding that claim of instructional error only cognizable where error rises to level of constitutional error substantially depriving defendant of fair trial). Upon denying Petitioner relief, the motion court further found that Petitioner's claim of instructional error could have, but was not, raised on direct appeal, and that the error, if any, did not deprive Petitioner of the right to a fair trial. (Resp. Ex. F at 32).

On appeal of the motion court's decision, Petitioner did not claim either instructional error or that counsel was ineffective regarding the alleged instructional error. (Resp. Ex. G). To preserve issues for federal habeas review, a state prisoner must fairly present his claim to state courts during his direct appeal or in post-conviction proceedings. See Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Where a state prisoner defaults his claim in state court pursuant to an independent and adequate state procedural rule, such as failing to raise the claim on direct appeal, federal habeas relief is barred. See Coleman v. Thompson, 501 U.S. 722, 750 (1991). As argued by Respondent, Petitioner has, therefore, procedurally defaulted Ground 2.

To the extent Petitioner argues that his procedural default should be excused based on counsel's ineffectiveness, for ineffective assistance to excuse procedural default a federal habeas petitioner must have properly raised the ineffectiveness claim in state court. See

Williams v. Kemna, 311 F.3d 895, 897 (8th Cir. 2002). Because Petitioner did not so, the Court further finds that Petitioner has not stated grounds to excuse his procedural default of Ground 2 and that Ground 2 should be dismissed. In any case, the error regarding the stealing instruction was harmless given that the jury found Petitioner guilty on Count 1, robbery in the first degree. Cf. Cooper v. Campbell, 597 F.2d 628, (8th Cir. 2979) (failure to give lesser-included offense instruction of second degree murder was clearly harmless where jury found defendant guilty of murder in first degree). Under such circumstances, Petitioner cannot establish that he was prejudiced as a result of counsel's error. See Strickland, 466 U.S. at 687–89.

**Ground 3:** Defense counsel was ineffective for failing to move for a mistrial based on Petitioner's incompetence to stand trial or failing to invoke Mo. Rev. Stat. § 552.020.2 to determine whether Petitioner was competent to stand trial. Upon addressing Petitioner's Ground 3, the Missouri appellate court first considered that the two-pronged test articulated in Strickland, 466 U.S. at 687-88, for establishing ineffective-assistance was applicable to Petitioner's claim, and then held:

> According to Robinson-Bey, Counsel should have informed the trial court that Robinson-Bey was not competent to stand trial prior to or during trial. During sentencing, there was a discussion concerning Robinson-Bey's behavior during trial. Counsel stated that Robinson-Bey was intoxicated throughout the whole trial, and this affected the ability to prepare his defense. However, the court noted that while Robinson-Bey did appear to be "nodding" and "sleepy," or not paying attention primarily during jury selection, there was no indication that he was unaware of what was happening in the courtroom. Moreover, the prosecutor also acknowledged he observed Robinson-Bey during the trial, and the prosecutor believed Robinson-Bey knew "what was going on." The prosecutor and the court commented that during some portions of the trial Robinson-Bey was very alert and involved in the trial.
>
> Pursuant to section 552.020.1 RSMo 2000, "[n[o person who as a result of mental disease or defect lacks capacity to understand the proceedings against

him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." The standard for competence is whether the defendant has sufficient present ability to consult with his lawyer, as well as a rational and factual understanding of the proceedings against him. Zink v. State, 278 S.W.3d 170, 183 (Mo. banc 2009). If a defendant seeks post-conviction relief on the grounds of ineffective assistance of counsel for failure to seek a mental examination, the defendant must show a factual basis for the claim that his mental condition was questionable and counsel had reason to question the defendant's mental state. State v. Skelton, 887 S.W 2d 699, 706 (Mo. App. S.D. 1994).

While there may be an argument that Counsel should have called Robinson-Bey's intoxication to the attention of the court based upon counsel's statements at sentencing, the record clearly refutes any claim of prejudice resulting from any potential error of Counsel. As noted above, Robinson-Bey must show both ineffectiveness and prejudice to prevail on his claim for post-conviction relief. Skillicorn, 22 S.W.3d at 681. To prove prejudice, he must show a reasonable probability that, but for the alleged ineffectiveness of counsel, the result of the proceeding would have been different. Id. Based upon the record in this case, there is nothing to prove the outcome would have been different had counsel called Robinson-Bey's intoxication to the trial court's attention prior to or during trial.

A trial court is required to investigate a defendant's competency if a reasonable judge in the same situation would experience doubt that the defendant's competency to stand trial. State v. Johns, 42 S.W.3d 93, 104 (Mo. banc 2000); Section 552.020.2. Here, the record shows the trial court did not believe Robinson-Bey behaved as if he were unaware of what was happening, nor did he fail to participate in his own trial. The court noted Robinson-Bey primarily had difficulty paying attention during jury selection, but at other times during the trial was very alert and engaged. The court stated if it had observed any behavior to indicate Robinson-Bey was unable to participate in his own defense, it would have addressed the issue during trial. However, the court did not see anything of that nature happen at any time during the trial. In fact, Robinson-Bey laughed during the victim's testimony and testified on his own behalf thereafter. During his testimony, Robinson-Bey explained he laughed because he believed the victim was lying. Robinson-Bey's own testimony was coherent, and in no way indicated he was unable to understand or participate in the proceedings. Based upon the evidence in the record before us, the trial court was not required to question Robinson-Bey's competence to stand trial sua sponte. Moreover, the record reflects that even if Counsel had raised the issue of Robinson-Bey's competence, he would not have been found to be incompetent, and therefore, Robinson-Bey cannot show prejudice. See Zink, 278 S.W.3d at 185 (even if counsel had challenged competency to stand trial, Zink would not have

been found incompetent, and therefore Zink could not show prejudice). As a result, the motion court did not clearly err in denying Robinson-Bey's request for post-conviction relief.

(Resp. Ex. I at 3-4).

First, upon denying Petitioner relief based on Ground 1, the State appellate court relied on the factual findings of the trial court regarding Petitioner's alertness, coherency, and ability to understand and participate in the proceedings. These factual determinations are subject to a presumption of correctness, and can be rebutted only by clear and convincing evidence. See Hall v. Luebbers, 342 F.3d 706, 712 (8th Cir. 2003) (citing § 2254(e)(1)).

Second, under federal law, a defendant is competent if he has a "rational as well as factual understanding of the proceedings." United States v. Grey Cloud, 90 F.3d 322, 323 (8th Cir. 1996). Any error of a trial court in failing to hold a competency hearing is harmless where a trial court later determines in post-conviction proceedings that a defendant was competent. See Campbell v. Lockhart, 789 F.2d 644, (8th Cir. 1986). Where error in failing to hold a competency hearing is harmless, counsel's failure to request a competency hearing does not prejudice a defendant, and, therefore counsel's performance was not ineffective. See id.; see also King v. Kemna, 266 F.3d 816, 824 (8th Cir. 2001) (counsel not ineffective for failing to assert diminished capacity defense where state post-conviction court found defendant did not suffer from mental disease or defect; defendant was not prejudiced by counsel's failure).

Third, to the extent the State appellate court relied on the procedural requirements of Mo. Rev. Stat. § 552.020.2, issues concerning the interpretation and application of state law are not cognizable in federal habeas review. See Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (it is not the province of federal habeas court to reexamine state court determinations on state

law questions). Further, a federal habeas court is bound by a state's interpretation of its own statute. See Garner v. Louisiana, 368 U.S. 157, 166 (1961).

Fourth, consistent with federal law as articulated in Strickland, 466 U.S. at 687–89, the State appellate court considered that counsel's performance was not unreasonable based on Petitioner's demonstrating his competence, and that Petitioner was not prejudiced by counsel's omission; even if counsel had raised the competence issue, he would not have been successful. See King, 266 F.3d at 824. This Court finds, therefore, that the State court's decision regarding Petitioner's Ground 3 is not contrary to federal law and that it is a reasonable application of federal law to the facts of Petitioner's case. See Williams, 529 U.S. at 412–13.

## IV.
## CONCLUSION

For the reasons discussed above, the Court finds that Petitioner's Grounds 1-3 are either not cognizable, procedurally defaulted, or without merit, and that, therefore, his § 2254 petition should be dismissed, with prejudice.

Further, because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not grant a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Petitioner in his § 2254 petition (ECF No. 1) is **DENIED**, and that the § 2254 Petition is **DISMISSED,** with prejudice;

**IT IS FURTHER ORDERED** that a separate judgment incorporating this Memorandum and Order shall issue this same date;

**IT IS FINALLY ORDERED** that the Court will not issue a certificate of appealability.

Dated this 25th Day of November, 2013.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE